Jacob A. Schroeder (State Bar No. 264717)
Email: jacob.schroeder@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

*(Additional counsel listed on signature page)*

Attorneys for Defendant
Nikon Americas, Inc. and Nikon Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT INC.,<br><br>Plaintiff,<br><br>v.<br><br>NIKON AMERICAS, INC. and NIKON INC.,<br><br>Defendant. | CASE NO. 4:17-CV-5936-YGR<br><br>**NIKON AMERICAS, INC. AND NIKON INC.'s ANSWER TO AMENDED COMPLAINT**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>Jury Trial Demanded |

Nikon Americas, Inc. and Nikon Inc. (hereafter "Nikon"), as their answer to Cellspin Soft Inc.'s ("Cellspin's") Complaint for Infringement of U.S. Patent Nos. 8,738,794 ("the '794 patent"), 8,892,752 ("the '752 patent"), 9,258,698 ("the '698 patent") and 9,749,847 ("the '847 patent"), hereby aver as follows:

## NATURE OF THE ACTION[1]

1. Admitted in part; denied in part. Nikon admits that the Complaint states, "[t]his is a patent infringement action", but denies that the Complaint states a viable claim for patent infringement. Nikon admits that according to their respective faces, the '794 patent, the '752 patent, the '698 patent and the '847 patent are entitled, "Automatic Multimedia Upload for Publishing Data and Multimedia Content". Nikon denies the remaining allegations of paragraph 1.

## THE PARTIES

2. Denied. Nikon lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 2 and therefore denies them.

3. Admitted.

4. Admitted.

5. The allegations set forth in paragraph 5 do not require a response from Nikon.

## JURISDICTION AND VENUE

6. Admitted.

7. Denied. Nikon lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 7 and therefore denies them.

8. Admitted in part; denied in part. Nikon Inc. admits that this Court has personal jurisdiction over it. Nikon Inc. denies the remaining allegations of paragraph 8. Nikon Americas, Inc. denies the allegations of paragraph 8. The Court lacks personal jurisdiction over Nikon Americas, Inc. as Nikon Americas, Inc. has no property, employees, bank accounts or address in the

---

[1] Nikon reproduced the Complaint's headings for the Court's convenience. Nikon expressly denies any and all allegations contained in the headings of the Complaint and in the headings of this Answer.

State of California, and as it is a holding company, has no products, no sales and no contacts with the State of California.

9. Admitted in part; denied in part. Nikon Inc. admits that venue in this district is permissible for it only, but denies that this district is the most convenient forum. Nikon Inc. and Nikon Americas, Inc. deny the remaining allegations of paragraph 9.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,738,794**

10. Nikon incorporates by reference the preceding paragraphs of this Answer in their entirety in response to paragraph 10 of the Complaint.

11. Admitted in part; denied in part. Nikon admits that, according to its face, the '794 patent issued on May 27, 2014. Nikon denies the remaining allegations of paragraph 11.

12. Paragraph 12 is a legal conclusion that does not require a response from Nikon.

13. Admitted in part; denied in part. Nikon admits that the D7500, D5600, D500, D850, D3400, KeyMission 80, Coolpix A300, Coolpix W300, Coolpix W100, Coolpix B500, KeyMission 170, KeyMission 360, Coolpix B700, and Coolpix A900 are capable of using one or more different versions of Bluetooth. Nikon denies the remaining allegations of paragraph 13.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied. Nikon denies that any of its activities recited in the Complaint require authority and/or a license from Plaintiff.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,892,752**

20. Nikon incorporates by reference the preceding paragraphs of this Answer in their entirety in response to paragraph 20 of the Complaint.

21. Admitted in part; denied in part. Nikon admits that, according to its face, the '752 patent issued on November 18, 2014. Nikon denies the remaining allegations of paragraph 21.

22. Paragraph 22 is a legal conclusion that does not require a response from Nikon.

23. Admitted in part; denied in part. Nikon admits that the D7500, D5600, D500, D850, D3400, KeyMission 80, Coolpix A300, Coolpix W300, Coolpix W100, Coolpix B500, KeyMission 170, KeyMission 360, Coolpix B700, and Coolpix A900 are capable of using one or more different versions of Bluetooth. Nikon denies the remaining allegations of paragraph 23.

24. Denied.

25. Denied.

26. Admitted in part; denied in part. Nikon Inc. admits that it provides products and software, along with instructions, to its users. Nikon denies the remaining allegations of paragraph 26.

27. Denied.

28. Denied.

29. Denied. Nikon denies that any of its activities recited in the Complaint require authority and/or a license from Plaintiff.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,258,698**

30. Nikon incorporates by reference the preceding paragraphs of this Answer in their entirety in response to paragraph 30 of the Complaint.

31. Admitted in part; denied in part. Nikon admits that, according to its face, the ’698 patent issued on February 9, 2016. Nikon denies the remaining allegations of paragraph 31.

32. Paragraph 32 is a legal conclusion that does not require a response from Nikon.

33. Admitted in part; denied in part. Nikon admits that the D7500, D5600, D500, D850, D3400, Coolpix A300, Coolpix W300, Coolpix W100, KeyMission 80, Coolpix B500, KeyMission 170, KeyMission 360, Coolpix B700, and Coolpix A900 are capable of using one or more different versions of WiFi and/or Bluetooth. Nikon denies the remaining allegations of paragraph 33.

34. Denied.

35. Denied.

36. Admitted in part; denied in part. Nikon Inc. admits that it provides products and software, along with instructions, to its users. Nikon denies the remaining allegations of paragraph 36.

37. Denied.

38. Denied.

39. Denied. Nikon denies that any of its activities recited in the Complaint require authority and/or a license from Plaintiff.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,749,847**

40. Nikon incorporates by reference the preceding paragraphs of this Answer in their entirety in response to paragraph 40 of the Complaint.

41. Admitted in part; denied in part. Nikon admits that, according to its face, the '847 patent issued on August 29, 2017. Nikon denies the remaining allegations of paragraph 41.

42. Paragraph 42 is a legal conclusion that does not require a response from Nikon.

43. Denied.

44. Denied.

45. Denied.

46. Admitted in part; denied in part. Nikon Inc. admits that it provides products and software, along with instructions, to its users. Nikon denies the remaining allegations of paragraph 46.

47. Denied.

48. Denied.

49. Denied. Nikon denies that any of its activities recited in the Complaint require authority and/or a license from Plaintiff.

**DAMAGES**

50. Denied.

51. Denied.

52. Denied.

**PRAYER FOR RELIEF**

Nikon denies that Cellspin is entitled to any relief whatsoever, either as requested in Plaintiff's Prayer for Relief, or otherwise.

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The Complaint fails to state a claim upon which any relief can be granted because the ’794, ’752, ’698 and ’847 patents (collectively, “the patents-in-suit”) claim patent ineligible subject matter, contrary to 35 U.S.C. §101.

**SECOND AFFIRMATIVE DEFENSE**

**(Non-infringement)**

2. Nikon has not and does not infringe any claim of the patents-in-suit, has not and does not induce or contribute to the infringement of any claim of the patents-in-suit, and has not and does not jointly infringe any claim of the patents-in-suit.

**THIRD AFFIRMATIVE DEFENSE**

**(Invalidity)**

3. One or more of the asserted claims of the patents-in-suit is invalid pursuant to Title 35, United States Code, §§101, 102, 103 and 112, *et seq*.

**FOURTH AFFIRMATIVE DEFENSE**

**(Failure to Give Notice)**

4. Cellspin is not entitled to the damages it requested for Nikon’s activities prior to the filing of this action due to failure to give notice of the patents-in-suit to Nikon prior to filing this action.

**FIFTH AFFIRMATIVE DEFENSE**

**(Unenforceability)**

5. Some or all claims of the patents-in-suit are unenforceable due to Cellspin’s inequitable conduct and/or unclean hands before the U.S. Patent and Trademark Office (“USPTO”) during the prosecution of each of the patents-in-suit and/or during prosecution of U.S. Patent Application No. 12/333,303 (hereafter, “the ’303 application”), which is the parent application of the patents-in-suit.

6. On information and belief, individuals subject to the duty of candor under 37 C.F.R. §1.56 (“Applicants” and/or “Cellspin”), including without limitation, the listed inventors Gurvinder

Singh ("Singh"), Marcos Klein ("Klein"), Vince Laviano ("Laviano"), and counsel, including Ashok Tankha ("Tankha"), engaged in inequitable conduct and/or unclean hands by making material misrepresentations with the intent to deceive the USPTO during prosecution of the '303 application and by withholding material information with the intent to deceive the USPTO during prosecution of the '303 application and/or during prosecution of each of the patents-in-suit.

7. On September 15, 2010, during prosecution of the '303 application, the USPTO examiner issued a Non-final Office Action rejecting the then-pending claims in the '303 application. As of March 21, 2011, the examiner had not received a response from Cellspin to the September 15, 2010 office action. On March 21, 2011, the examiner conducted a telephonic interview with Tankha, Cellspin's counsel, concerning the status of the application. The examiner's Interview Summary reports that the "[a]pplicant conformed [sic] the abandonment" of the '303 application. The Interview Summary sent to Cellspin notes that Cellspin was given a 30-day period to file its own Statement of the Substance of the Interview. Cellspin did not file its own Statement of the Substance of the Interview or any other statement refuting, correcting, or clarifying the examiner's Interview Summary, which reported that during the interview, Cellspin confirmed its intent to abandon the '303 application.

8. Accordingly, three days later, on March 24, 2011, the USPTO mailed a Notice of Abandonment to Cellspin. The Notice of Abandonment stated that the USPTO considered the '303 application to be abandoned in view of Cellspin's failure to timely respond to the September 15, 2010 office action and further noted that as of the date of the notice, the USPTO had not received a response from Cellspin to the September 15, 2010 office action. As a further basis for the Notice of Abandonment, the USPTO referenced the examiner's Interview Summary of the March 21, 2011 telephonic interview during which Cellspin confirmed its intention to abandon the '303 application.

9. About one year later, on March 12, 2012, Cellspin's counsel, Tankha, filed a Petition for Revival, materially and falsely claiming that Cellspin's delay in timely filing a response to the September 15, 2010 office action was "unintentional." The Petition for Revival form submitted by Cellspin required a statement by Cellspin that "the entire delay was unintentional." The Petition for Revival form further advised that the USPTO may "require additional information if there is a

question as to whether . . . the abandonment . . . was unintentional." On information and belief, Cellspin, through its counsel Tankha, signed the Petition for Revival form knowingly, intentionally, and falsely certifying that "[t]he entire delay in filing the required reply . . . was unintentional." In submitting its Petition for Revival, Cellspin misleadingly failed to reference or otherwise advise the USPTO of the examiner's March 21, 2011 Interview Summary, which reported that Cellspin had previously confirmed that the '303 application had been abandoned. Cellspin further misleadingly failed to submit any additional information with its Petition for Revival concerning the questions raised by the examiner's Interview Summary, which provides contrary evidence showing that Cellspin had knowingly and intentionally abandoned the '303 application and that Cellspin's failure to respond to the September 15, 2010 office action was not unintentional.

10. The USPTO relied on Cellspin's knowingly false and material misrepresentations, and on March 30, 2012, the USPTO mailed a notice to Cellspin, granting the Petition for Revival. The notice recited the USPTO's reliance on Cellspin's materially false "statement of unintentional delay" in responding to the September 15, 2010 office action. As a result of Cellspin's materially false misrepresentation that its reply to the September 15, 2010 office action was unintentional and as a result of Cellspin's intentional failure to apprise the USPTO of its prior contrary statement to the examiner confirming its abandonment of the '303 application, the USPTO was wrongly and fraudulently induced to grant Cellspin's Petition for Revival.

11. On information and belief, Cellspin's material misrepresentations to the USPTO were made with the intent to deceive the USPTO in a scheme to fraudulently revive the knowingly and intentionally abandoned '303 application. On information and belief, the '303 application would have remained abandoned and would not have been revived if Cellspin had not made the material misrepresentations. Moreover, the four patents-in-suit which issued from continuation applications, continuations-in-part applications, or divisional applications from their common parent application, the '303 application, would not have been issued by the USPTO but for Cellspin's materially false and misleading statements to the USPTO, which fraudulently induced the USPTO to revive the '303 application.

12. As a consequence of Cellspin's material misrepresentations, all four patents-in-suit were procured through Cellspin's inequitable conduct and/or unclean hands, and all four patents-in-suit are unenforceable.

13. As separate and additional reasons, Cellspin engaged in inequitable conduct and/or unclean hands, and the four patents-in-suit are unenforceable due to Cellspin's withholding of material information with the intent to deceive the USPTO during the prosecution of the '303 application and during the prosecution of each of the four patents-in-suit.

14. On December 23, 2008, Cellspin filed an international application under the Patent Cooperation Treaty ("PCT") based on the '303 application and U.S. Application No. 61/017,202, claiming priority from those applications. Cellspin filed its PCT application as PCT/US2008/088083 ("the '083 PCT application").

15. The Korean Intellectual Property Office ("KIPO") acted as the International Search Authority to search for and identify prior art patents, patent applications, and other publications pertinent to the patentability of the claimed subject matter in the '083 PCT application.

16. On or about July 27, 2009 and while prosecution of the '303 application was then still pending, KIPO mailed an English-language search report ("the PCT search report") to Cellspin indicating that KIPO's search had identified Korean Patent KR 1020050014972 ("the Korean '972 patent") as relevant prior art. Specifically, in the PCT search report, KIPO classified the Korean '972 patent as a Category "Y" reference, which means that the Korean '972 patent was a "document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art."

17. After receiving the PCT search report from KIPO, Cellspin, on September 16, 2009, mailed an Information Disclosure Statement ("IDS") to the USPTO to be filed in connection with the '303 application. The IDS identified the Korean '972 patent by its patent number, country code, publication date, and patentee name. However, although the IDS form provided a space for Cellspin to identify the "pages, columns, lines where relevant passages or relevant figures appear," Cellspin left the space blank and provided no additional information about the content of the Korean '972

patent. Further, Cellspin did not provide to the USPTO the Korean language version of the Korean ’972 patent. Cellspin also did not provide to the USPTO an English translation of the Korean ’972 patent, or an abstract or other description of the Korean ’972 patent. Neither did Cellspin provide to the USPTO the PCT search report.

18. The ’303 application, similar to the patents-in-suit, was directed to the three-step wireless transfer of digital data from (1) a camera to (2) a smartphone and then to (3) an Internet server. The Korean ’972 patent, which was published before the filing date of the ’303 application, discloses a method of transferring digital data from (1) a camera to (2) a smartphone and then to (3) an Internet server. However, without an understanding of the Korean language text of the Korean ’972 patent, the examiner of the ’303 application could not understand the materiality of the Korean ’972 patent, which either alone or in combination with other references anticipated or rendered obvious the subject matter claimed in the ’303 application. Accordingly, upon information and belief, Cellspin deliberately and with the intent to deceive the USPTO knowingly and misleadingly failed to provide an English translation of either the entirety of the Korean ’972 patent or of its pertinent parts. Moreover, upon information and belief, Cellspin deliberately and with the intent to deceive the USPTO knowingly and misleadingly failed to provide a description of the “pages, columns, lines where relevant passages or relevant figures appear” in the Korean ’972 patent, despite the request to do so on the IDS form. Upon information and belief, Cellspin’s failure to provide translations and descriptions of the pertinent parts of the Korean ’972 patent was intended to conceal the materiality of the Korean ’972 patent from the USPTO and to deceptively suppress further inquiry by the examiner into the substance of the Korean ’972 patent’s disclosure.

19. To further suppress the examiner’s inquiry into the substance of the Korean ’972 patent’s disclosure and with the intention to conceal the materiality of the Korean ’972 patent, Cellspin deliberately and with the intent to deceive the USPTO failed to disclose the contents of the PCT search report and failed to provide a copy of the PCT search report to the USPTO. Cellspin indicated in its Certification Statement submitted with the IDS that “each item listed in the Information Disclosure Statement submitted herewith was cited in the PCT Search Report mailed on 24 July 2009.” Thus, although Cellspin referenced the PCT search report and admitted its knowledge

of the PCT search report, it misleadingly failed to disclose its contents or to provide a copy of the PCT search report, which would have disclosed to the examiner that the Korean ’972 patent had been classified as a Category Y “document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.”

20. Cellspin and one or more of the individuals subject to the duty of candor under 37 C.F.R. § 1.56, including without limitation, the listed inventors Singh, Klein, Laviano, and counsel, including Tankha, thus had in their possession information that they knew was material to the patentability of the subject matter claimed in the ’303 application and that they knew was classified in the PCT search report as material to the patentability of the claimed subject matter in the ’303 application, but nonetheless deliberately and with the intent to deceive the USPTO, withheld that information from the USPTO.

21. Likewise and in furtherance of the same deceptive scheme, Cellspin and one or more of the individuals subject to the duty of candor under 37 C.F.R. § 1.56 including, without limitation, the listed inventors Singh, Klein, Laviano, and counsel, including Tankha, made no further submissions or disclosures concerning the Korean ’972 patent or the PCT search report in any of the four applications from which the patents-in-suit issued. They did not submit an IDS disclosing the Korean ’972 patent or the PCT search report in any of the four applications from which the patent-in-suit issued. They did not provide a copy of the PCT search report in any of the four applications from which the patents-in-suit issued. They did not provide English translations of the entirety of the Korean ’972 patent or of any of its pertinent parts in any of the four applications from which the patents-in-suit issued.

22. The Korean ’972 patent and the PCT search report are material to the patentability of at least independent claim 1 of the ’794 patent and its dependent claims. For example, the Korean ’972 patent discloses at least establishing a paired connection between a Bluetooth enabled data capture device and a Bluetooth enabled mobile device, acquiring new data in the Bluetooth enabled data capture device after the paired connection is established, and detecting and signaling the new data for transfer to the Bluetooth enabled mobile device. These features are material to the

patentability of at least claim 1 of the ’794 patent. As another example, the Korean ’972 patent further discloses at least determining the existence of new data for transfer by the Bluetooth enabled data capture device, sending from the Bluetooth enabled data capture device a data signal to the Bluetooth enabled mobile device corresponding to the existence of the new data over the established paired Bluetooth connection, and transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection. These features are also material to the patentability of at least claim 1 of the ’794 patent. As yet another example, the Korean ’972 patent further discloses at least receiving at the Bluetooth enabled mobile device the new data from the Bluetooth enabled data capture device and transferring the new data received by the Bluetooth enabled mobile device to a web service. These features are also material to the patentability of at least claim 1 of the ’794 patent. As another example, the Korean ’972 patent further discloses at least receiving at the web service the new data from the Bluetooth enabled mobile device and making available the new data received from the Bluetooth enabled mobile device for consumption over the internet. These features are also material to the patentability of at least claim 1 of the ’794 patent.

23. On information and belief, Applicants deliberately failed to disclose the Korean ’972 patent and the PCT search report to the USPTO with the intent to deceive the USPTO during prosecution of the ’794 patent. The USPTO would not have allowed at least claim 1 of the ’794 patent if it had been aware of the substance of the PCT search report and the Korean ’972 patent. Therefore, the PCT search report and the Korean ’972 patent are but-for material prior art as to the ’794 patent.

24. The Korean ’972 patent and the PCT search report are material to the patentability of at least independent claim 1 of the ’752 patent and its dependent claims. For example, the Korean ’972 patent discloses at least establishing a paired Bluetooth connection between a Bluetooth enabled data capture device and a Bluetooth enabled mobile device, acquiring new data in the Bluetooth enabled data capture device after the paired Bluetooth connection is established, and detecting and signaling the new data for transfer from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device. These features are material to the patentability of at least

claim 1 of the ’752 patent. As another example, the Korean ’972 patent further discloses at least enabling event notification on the Bluetooth enabled data capture device corresponding to new data for transfer, determining the existence of the new data for transfer, and sending an event notification to the Bluetooth enabled mobile device corresponding to the existence of the new data for transfer over the paired Bluetooth connection, where the Bluetooth enabled mobile device is configured to listen for the event notification sent from the Bluetooth enabled data capture device. These features are material to the patentability of at least claim 1 of the ’752 patent. As yet another example, the Korean ’972 patent further discloses at least transferring the new data from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device over the established paired Bluetooth connection, where the Bluetooth enabled mobile device has access to the Internet and is configured to send the obtained new data to a remote internet server. These features are material to the patentability of at least claim 1 of the ’752 patent.

25. On information and belief, Applicants deliberately failed to disclose the Korean ’972 patent and the PCT search report to the USPTO with the intent to deceive the USPTO during prosecution of the ’752 patent. The USPTO would not have allowed at least claim 1 of the ’752 patent if it had been aware of the substance of the Korean ’972 patent and the PCT search report. Therefore, the Korean ’972 patent and the PCT search report are but-for material prior art as to the ’752 patent.

26. The Korean ’972 patent and the PCT search report are material to the patentability of at least independent claim 1 of the ’698 patent and its dependent claims. For example, the Korean ’972 patent discloses at least establishing a short-range paired wireless connection between a digital camera device and a cellular phone that has access to the Internet, acquiring a new media by the digital camera device after the short-range paired wireless connection between the digital camera device and the cellular phone is established, storing the new media in a memory of the digital camera device, and transferring the new media to the cellular phone over the established short-range paired wireless connection, where the cellular phone is configured to receive the new media and to upload the received new media to a website. These features are material to the patentability of at least claim 1 of the ’698 patent.

27. On information and belief, Applicants deliberately failed to disclose the Korean '972 patent and the PCT search report to the USPTO with the intent to deceive the USPTO during prosecution of the '698 patent. The USPTO would not have allowed at least claim 1 of the '698 patent if it had been aware of the substance of the Korean '972 patent and the PCT search report. Therefore, the Korean '972 patent and the PCT search report are but-for material prior art as to the '698 patent.

28. The Korean '972 patent and the PCT search report are material to the patentability of at least independent claim 1 of the '847 patent and its dependent claims. For example, the Korean '972 patent discloses at least a Bluetooth enabled data capture device that includes a memory device, a processor coupled to the memory, a data capture circuitry, and a Bluetooth communication device that is configured to establish a paired Bluetooth wireless connection between the Bluetooth enabled data capture device and a Bluetooth enabled cellular phone. The processor is configured to acquire new data using the data capture circuitry after the paired Bluetooth wireless connection between the Bluetooth enabled data capture device and the Bluetooth enabled cellular phone is established. The processor is also configured to store the acquired new data in the memory device and to send an event notification and the acquired new data to the Bluetooth enabled cellular phone over the established paired Bluetooth wireless connection. The Bluetooth enabled cellular phone waits to receive the event notification from the Bluetooth enabled data capture device over the established paired Bluetooth wireless connection, receives the event notification and the acquired new data from the Bluetooth enabled data capture device over the established paired Bluetooth wireless connection, and then transfers the new data received from the Bluetooth enabled data capture device to a website. These features are material to the patentability of at least claim 1 of the '847 patent.

29. On information and belief, Applicants deliberately failed to disclose the Korean '972 patent and the PCT search report to the USPTO with the intent to deceive the USPTO during prosecution of the '847 patent. The USPTO would not have allowed at least claim 1 of the '847 patent if it had been aware of the substance of the Korean '972 patent and the PCT search report. Therefore, the Korean '972 patent and the PCT search report are but-for material prior art as to the '847 patent.

30. On information and belief, Cellspin engaged in a pattern of deliberately withholding and misrepresenting material information during prosecution of the '303 application and the patents-in-suit with the intent to deceive the USPTO, rendering the patents-in-suit unenforceable for inequitable conduct and/or unclean hands. The permeation and extent of this misconduct throughout Cellspin's prosecution of the '303 application and the patents-in-suit further confirms that Cellspin and one or more of the individuals subject to the duty of candor under 37 C.F.R. § 1.56, including without limitation, the listed inventors Singh, Klein, Laviano, and counsel, including Tankha, acted with intent to deceive.

**SIXTH AFFIRMATIVE DEFENSE**

**(No Willful Infringement)**

31. Cellspin is not entitled to enhanced or increased damages because Nikon has not intentionally, willfully, deliberately or recklessly infringed any claim of the patents-in-suit.

**SEVENTH AFFIRMATIVE DEFENSE**

**(No Injunctive Relief)**

32. Cellspin is not entitled to a preliminary or permanent injunction because Cellspin does not compete with Nikon. Specifically, Cellspin does not sell products that contain the claimed subject matter of the patents-in-suit. Moreover, Cellspin has not suffered irreparable harm and has an adequate remedy at law. Therefore a preliminary or permanent injunction is not warranted in this case.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Prosecution History Estoppel/Disclaimer)**

33. Cellspin is barred from construing the asserted claims of the patents-in-suit to recapture that which was surrendered during prosecution, and/or barred from applying the doctrine of equivalents to the asserted claims under the doctrine of prosecution history estoppel due to narrowing claim amendments and arguments made by Cellspin during prosecution of the asserted patents to avoid the prior art then under consideration by the USPTO.

**PRAYER FOR RELIEF**

On Nikon's Answer

WHEREFORE, Nikon Inc. respectfully prays that the Court:

A. Enter judgment in Nikon's favor and against Cellspin, thereby dismissing Cellspin's Complaint in its entirety with prejudice, and that Cellspin take nothing;

B. Find that each of the asserted claims of Cellspin's patents-in-suit is not infringed, invalid and/or that the patents-in-suit are unenforceable;

C. Deny Cellspin's request for injunctive relief;

D. Enjoin Cellspin and its assigns, licensees and all those in privity with Cellspin from asserting the patents-in-suit against Nikon, its parents, affiliates, customers, users and all those in privity with Nikon;

E. Declare this an exceptional case pursuant to 35 U.S.C. §285 and award Nikon its costs, attorneys' fees and expenses;

F. Grant Nikon such other and additional relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), the Defendants demand a trial by jury on all issues triable of right by a jury.

Dated: August 30, 2019

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

By: */s/ Jacob A. Schroeder*
Jacob A. Schroeder

Attorney for Defendant
Nikon Americas, Inc. and Nikon Inc.

Additional Counsel:

Houtan K. Esfahani (*pro hac vice*)
Email: houtan.esfahani@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400